UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 09-373-GWU


BARBARA HENRY,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the court on cross-motions

for summary judgment.


## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity?
    If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful
    activity, does he have any "severe" impairment or combination
    of impairments--i.e., any impairments significantly limiting his
    physical or mental ability to do basic work activities? If not, a
    finding of non-disability is made and the claim is denied.

3.     The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

2

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

6

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Barbara Henry, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of obesity, degenerative joint disease of the knees, osteoarthritis of the left shoulder, and chronic back pain with mild canal stenosis in the lumbar spine.  (Tr. 17).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 18-23).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion, and also had the following non-exertional restrictions. She: (1) could never crawl or climb ladders, ropes, and scaffolds; (2) could occasionally stoop, kneel, crouch, and climb ramps and stairs; (3) could occasionally reach in all directions, including overhead, with the non-dominant left upper extremity; (4) should avoid full body vibration or the use of vibratory tools with the left hand; and (5) because of her body habitus, she needed to avoid hazards

such as unprotected heights and moving machinery.  (Tr. 940).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 940-2).

On appeal, the plaintiff argues that the ALJ's decision provided insufficient grounds for discounting the opinions of her treating physicians.  Finding itself in partial agreement with the plaintiff, the court will remand the case for further proceedings.

The plaintiff, who had a long work history as a delivery driver for United Parcel Service and a history of injuries to her lower back, shoulders, and knees, alleged disability beginning April 19, 2004 due to these musculoskeletal conditions. (Tr. 91-3).  She testified to an inability to sit or stand for periods of more than approximately 30 minutes due to back and hip pain, and stated that she normally changed positions approximately every 15 minutes.  (Tr. 929-34).  Her fingertips were numb due to a longstanding neck injury, and her hands would become numb with use.  (Tr. 930).  Problems with her knees made stair climbing difficult.  (Tr. 922-3).

There are extensive medical records in the transcript, many of which predate the alleged onset date by years.  The plaintiff underwent a number of independent medical examinations, apparently for Worker's Compensation purposes.

During the relevant period, the plaintiff asserts that she had two treating sources, Dr. David C. Dome, who treated problems with her left shoulder and knees (Tr. 706), and Dr. Debora Tallio, who focused on her lower back and lower extremity pain (Tr. 768, 902).

Dr. Dome's treatment stretched from August, 2005 to January, 2008. He performed an arthroscopic lysis of adhesions in the left shoulder on November 1, 2005 (Tr. 645), followed by two manipulations of the shoulder under anesthesia because it was "frozen" (Tr. 642, 644, 654-7). The plaintiff was initially allowed to return to work with restrictions in February, 2006, although still unable to reach overhead or lift greater than 20 pounds (Tr. 648-51), but she was taken off work again, partly due to more knee problems (Tr. 728-9). After further examinations and some injections, Dr. Dome concluded that by January 23, 2008 the plaintiff was at maximum medical improvement and could return to work on "modified duty," which he defined as no prolonged standing and walking, no repetitive climbing of stairs and steps, and limited use of the left arm. (Tr. 760). She would also be allowed only limited use of the left leg. (Tr. 765).

Dr. Tallio first examined the plaintiff in June, 2006, and although her notes are difficult to read, it is clear that she reviewed many prior objective studies and sought permission for sacroiliac joint injections. (Tr. 768-77). Dr. Tallio referred her patient for a functional capacity evaluation in September, 2008, at which it was

determined that the plaintiff could not even perform sedentary level work. (Tr. 879-89). Dr. Tallio wrote a letter summarizing the plaintiff's condition on January 19, 2009 which discussed her back and sacroiliac joint problems and also indicated that she was having "ongoing significant problems with her left knee," for which she was being referred to another physician for further treatment. (Tr. 902). Regarding the functional capacity evaluation, Dr. Tallio noted that her patient had "participated fully in all tasks and no self-limiting behavior was noted." (Id.). She stated that she agreed with the results of the test and that her patient was "unable to maintain gainful employment."

Despite these treating source opinions, the ALJ found that "the assessment of the examining physician in the most recent IME [independent medical examination] report has been found highly probative as it is most consistent with the preponderance of medical and other evidence of record." (Tr. 21). Although not identified by name or exhibit number, this is presumably a reference to the examination of Dr. Richard Sheridan, which was conducted on June 16, 2008. (Tr. 81-90).[1]

---

[1]Dr. Sheridan assigned functional restrictions which are consistent with the hypothetical question, but stated that they were in relation to her left shoulder problem only although he had previously indicated that there was an additional whole body impairment of 5 percent due to her low back condition and 2 percent due to her right lower extremity impairment. (Tr. 89-90).

As grounds for rejecting the treating source opinions, the ALJ first noted that while treating physicians' medical opinions were normally entitled to controlling weight when supported by objective medical evidence, statements that patients are "unable to work" were administrative findings not entitled to deference.  Recognizing that this rule did not entirely dispose of Dr. Tallio's opinion, the ALJ went on to state that:

> In this case, the undersigned finds that the treating physician opinions positing that the claimant would be limited to no more than sedentary work or incapable of work at that exertional level are not well supported by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with the other substantial evidence in the record.  Moreover, the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he sympathizes for one reason or another.  Another reality that should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients requests and avoid unnecessary doctor/patient tension.  While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

(Tr. 19).

The plaintiff cites Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004) for the well-known proposition that an ALJ must give "good reasons" for not according controlling weight to treating physicians' opinions.  The Wilson rule is based on the Commissioner's own regulations at 20 C.F.R. § 404.1527(d)(2). The reasons given "must be sufficiently specific to make clear to any subsequent

11

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Social Security Ruling (SSR) 96-2p at *5.  One of the other purposes of the reason-giving requirement is to let claimants understand disposition of their cases.  <u>Wilson</u>, 378 F.3d at 544.  A failure to follow the procedural requirements for discounting the treating source opinions and explaining how the reasons affected the weight given to their evidence "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  <u>Rogers v. Commissioner of Social Security</u>, 486 F.3d 234 (6th Cir. 2007).

The Sixth Circuit has previously ruled that the exact language quoted above used by the ALJ to discount the treating physician's opinions is a "summary rejection" that falls short of the defendant's procedural requirements.  <u>Blakley v. Commissioner of Social Security</u>, 581 F.3d 399, 408 (6th Cir. 2009).  Essentially, the ALJ is simply making a conclusory statement that the limitation of the plaintiff to less than sedentary work is not supported by objective findings and that, based on no more than supposition, the opinion might have been given as an attempt to accommodate the plaintiff.[2]  There is no indication of why the ALJ might have

---

[2]It is equally possible that the opinions given by the physicians retained by Worker's Compensation carriers could have been rendered in an attempt to accommodate an employer.  Of course, it would be improper to draw any such conclusions without evidence.

thought that a facially valid functional capacity evaluation should be given no weight. Nor is it clear why, regarding Dr. Dome's opinion, there would not be at least some restrictions on the use of the left lower extremity.  Although the defendant cites a number of reasons in his brief for discounting the conclusions of the treating sources, the point is that none of them were given or discussed by the ALJ. "[S]ubstantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."  Blakley, 581 F.3d at 410.  To do otherwise "would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory."  Id., quoting Wilson, 378 F.3d at 546.

Although the evidence in the present case does not support an award of benefits, the decision will be remanded for further consideration of the factors outlined in this opinion.

This the 16th day of February, 2011.

Signed By:

G. Wix Unthank

United States Senior Judge